IN THE UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| FIDELITY AND DEPOSIT COMPANY OF MARYLAND, | ) ) ) |
| Plaintiff, | ) ) |
| vs. | ) CIVIL ACTION NO. 06-0338-CG-M ) |
| AMERICAN CONSERTECH, INC., et al., | ) ) |
| Defendants. | ) |

**ORDER**

This matter is before the court on plaintiff's motion for default judgment against defendants, American Consertech, Inc. , E. Scott Cope, and Gloria G. Cope (Doc. 83), the joint stipulated testimony submitted by plaintiff and defendant, Patricia Ann Zeller, (Doc. 103), plaintiff's trial brief (Doc. 104), Patricia Zeller's trial brief (Doc. 105), plaintiff's response (Doc. 109), and Patricia Zeller's response (Doc. 108). The court finds that Ms. Zeller has not presented clear and convincing evidence to overcome the presumption of correctness of the certificate of acknowledgments. Thus, the court finds that judgment is due to be entered in plaintiff's favor under the indemnity contracts at issue in this case. Summary judgment has already been granted in plaintiff's favor against defendant Charles Zeller. The court further finds that plaintiff's motion for default judgment against defendants, American Consertech, Inc. , E. Scott Cope, and Gloria G. Cope is due to be GRANTED. Therefore, the court will enter judgment in favor of plaintiff as against all defendants in this case.

**FACTS**

In this action, the plaintiff, Fidelity and Deposit Company of Maryland ("F&D"), seeks

1

to recover damages pursuant to indemnity agreements allegedly executed on May 8, 2002, and March 24, 2003.  Default was entered against defendants, American Consertech, Inc., E. Scott Cope, and Gloria G. Cope on January 11, 2007. (Doc. 44).  Summary judgment was entered in favor of plaintiff as to its claims against defendant, Charles Zeller. (Doc. 82).  Thus, the only claims remaining in dispute are plaintiff's claims against defendant, Patricia Ann Zeller.

A pretrial conference was held in this matter on December 4, 2007.  At the pretrial conference, the parties agreed that they would forego the scheduled bench trial and submit the case on stipulated facts and briefs.  The parties stated that there are no credibility issues for the court to determine.  Accordingly, the trial of this matter was cancelled and the parties have submitted stipulated testimony[1] and briefs.

At the heart of the parties' dispute is Ms. Zeller's assertion that she did not sign the indemnity agreements at issue or have any knowledge of them until the commencement of this suit.  The documents were signed by an individual purporting to be "Patricia Ann Zeller."   The documents show that a witness signed next to the signatures of "Patricia Ann Zeller" and that Ms. Zeller's signatures were acknowledged by a notary and stamped with a notary's seal.  According to Mr. Zeller, he signed his wife's name on both of the General Agreements of Indemnity, without her knowledge or permission. (Stipulated Testimony, p. 11).  Mr. Zeller

---

[1]  The court notes that a recitation of the testimony that the parties agree would be given if a trial was held is not the same as a stipulation of facts which the court understood the parties had agreed to submit. The parties represented that there were no credibility issues for the court to determine, yet have left the court with the task of determining whether the testimony of Mr. and Ms. Zeller, along with other circumstances present in this case, constitutes clear and convincing evidence that would overcome the presumption of correctness of the notary. The dispute centers around whether Mr and Ms. Zeller are telling the truth.  Had the court had the advantage of hearing and seeing the witnesses testify, the court may have been in a better position to judge whether the Zeller's testimony should be believed. However, since the parties are determined to have the remaining claims decided in this manner, the court will judge the testimony as it was submitted and will presume that live testimony would offer no additional clues as to the witnesses' veracity.

states that after the notary stamped and signed the notarial acknowledgments of his execution of the documents, he altered the documents to show that they were for both him and Ms. Zeller. (Id. at p. 12).

According to the Zellers, Ms. Zeller does not normally sign her name as "Patricia Ann Zeller" when signing official documents or anything related to money or business. (Id. at pp. 11, 15). Ms. Zeller normally signs her name as "Patricia Geiss," her legal name and occasionally uses "Patricia Zeller" at her children's school or at the doctor to avoid confusion. (Id. at pp. 12, 15).

The May 8, 2002, and March 24, 2003, agreements state that the Zellers shall indemnify plaintiff for losses and expenses associated with bonds issued by plaintiff on behalf of American Consertech, Inc. ("Consertech") and any losses or expenses sustained in enforcing the indemnity agreement. In reliance on the indemnity agreements, plaintiff issued several payment and performance bonds on Consertech's behalf for several public construction projects in Alabama. (Id. at p. 4). Consertech defaulted on each of five Alabama projects. (Id. at p. 6). In fulfilling the defaulted payments and performance obligations under the bonds and in seeking to enforce the indemnitors' obligations, plaintiff has incurred costs and expenses to date in excess of $3,400,000.00.[2]

## DISCUSSION

Ms. Zeller has not disputed the fact that Consertech has defaulted on its obligations; nor has she disputed the amount owed to plaintiff under the indemnity agreements. Ms. Zeller's opposition is based only on her assertion that she did not enter into the indemnity agreements.

---

[2] The exact amount of costs and expenses to date cannot be determined from the stipulated testimony. At page 6, the amount listed is $3,472,253.00. At page 8, it is $3,573,030.00. In plaintiff's motion for judgment against Mr. Zeller and the defaulting defendants, the amount requested is $3,476,165.70.

According to Ms. Zeller, the signatures on the indemnity agreements do not match her own signature, but she has not submitted any testimony or reports by a handwriting expert. The only evidence supporting her contention consists of her own statements and those of her husband. Her signatures on the documents were witnessed, accompanied by a certificate of acknowledgment, and stamped with a notary's seal in the State of Texas. The notary for each document expressly acknowledged that Patricia Ann Zeller personally appeared before the notary and executed the instrument and acknowledged same to be their act and deed. The Alabama, Texas, and Federal Rules of Evidence all provide that documents accompanied by a certificate of acknowledgment in a manner provided by law by a notary public or other officer authorized by law to take acknowledgments are self authenticating. ALA. R. EVID. 902(8), TEX. R. EVID. 902(8), FED. R. EVID. 902(8). "The certificate of a notary is presumptively correct, and the evidence necessary to impeach it must be clear and convincing." see e.g. Central Bank of the South v. Dinsmore, 475 So.2d 842, 845 (Ala. 1985) (citing Henslee v. Henslee, 263 Ala. 287, 82 So.2d 222, 225 (1955)); see also National Protective Legion v. Stevens, 258 S.W. 487, 488 (Tex.Civ.App. 1924) ("The presumption is in favor of the correctness of the officer's certificate.").

The court previously denied plaintiff's motion for summary judgment finding that, construing all reasonable inferences in favor of Ms. Zeller, as the non-movant, that the statements of Mr. and Ms. Zeller are sufficient to raise a question of fact as to whether Ms. Zeller entered into the indemnity agreements.[3] However, the summary judgment standard no

---

[3] Conversely, upon Ms. Zeller's motion to dismiss for lack of personal jurisdiction, the court found that "[c]onstruing all reasonable inferences in favor of the plaintiff, the court finds that the evidence submitted by defendant does not overcome the presumption of correctness supplied by the certificate of the notary." (Doc. 78). However, in the context of a motion to dismiss in which no evidentiary hearing is held, a plaintiff need establish only a prima facie case of jurisdiction. Huey v. Am. Truetzschler Corp., 47 F.Supp.2d 1342, 1344 (M.D. Ala. 1999)

longer applies and inferences are, therefore, no longer construed in favor of the plaintiff.

The parties appear to agree that the court should look to Alabama law to determine the weight that should be given to the notary acknowledgments in this case and that clear and convincing evidence is necessary to overcome the acknowledgments' presumption of correctness. Ms. Zeller contends that a case from the Supreme Court of Alabama, Central Bank of the South, support's her position that the evidence in this case is sufficiently clear and convincing that her signatures were forged. In Central Bank of the South, the Court found that the evidence that the signatories had not personally appeared before the notaries who acknowledged their signatures was sufficient to overcome the presumption that the certificates of acknowledgment were correct. Central Bank of the South, 475 So.2d at 845-846. One of the mortgagors, Mr. Todd, testified that the bank officer had given him only the last page of the four page mortgage document and that he had agreed to procure the necessary signatures and return the instrument to the bank. Id. at p. 844. The bank officer testified that he did not remember whether he gave him the entire document or only one page of it. Id. According to the mortgagor, he took the page to each of three signatories, two of which were unaware that they were signing a document purporting to give the bank a mortgage and all of which testified that they were presented with only the single page. Id. The two individuals thought they were signing a reference document to help Mr. Todd obtain a mortgage. Id. The document was reportedly then taken to a notary, who testified that he had no recollection of the events surrounding the attestation. Id. The acknowledgment did not refer to the signatories individually and instead

---

(citing Madara v. Hall, 916 F.2d 1510, 1514 (11th Cir. 1990)). "The court, in considering the motion, must take all allegations of the complaint that the defendant does not contest as true, and, where the parties' affidavits conflict, the court must construe all reasonable inferences in favor of the plaintiff." Id.; see also Hodges v. Furlong, 883 F.Supp. 1524, 1526 (S.D. Ala. 1995) ("Where the defendant's affidavits conflict with the complaint, the court must construe all reasonable inferences in favor of the plaintiff." citing Madara supra).

acknowledged the "above signed" signatures. Id. Because of the irregular reference to the "above signed," the title company informed the bank that there was a problem with the acknowledgment. Id.  The instrument was then re-recorded in the probate court with the addition of a fifth page which contained two separate notary certifications by a bank employee, acknowledging each of the signatories by name. Id. The bank subsequently noticed that the acknowledgments on page five were not dated and the bank re-recorded the entire document, with the inclusion of a date on the fifth page. Id.  All of the signatories to the mortgage denied having ever appeared before the bank employee who made the certification on page five and three signatories denied having ever been inside the branch office where the notary worked. Id. The notary had no recollection of the circumstances of the certification, but testified that she had never taken an acknowledgment of a person who had not appeared before her. Id.  The Court, in finding that the presumption of validity of the certificates of acknowledgment were overcome, stated the following:

> The simple fact that the bank saw fit to add a second acknowledgment by a different notary after the instrument was filed indicates that the bank entertained some doubts about the validity of the first acknowledgment. A second acknowledgment was made six months after the document was executed. None of the partners were customers of the bank and they denied having ever been in the bank.

Id. at 846.

In the instant case, unlike in Central Bank of the South, the certificates of acknowledgments appear proper on their face.  There is nothing on the face of the documents to indicate that the signatures of "Patricia Ann Zeller" were forgeries.  Ms. Zeller argues that her signatures on the indemnity agreements do not match her signatures on discovery documents in this case.  However, she has presented no expert testimony to support that contention.  The court notes that Ms. Zeller would have obvious reasons to attempt to alter her signature when signing

documents in this case and that the court has no expertise in handwriting assessment. In fact, the court notes that a visual examination of the documents indicates that Ms. Zeller's name could not have been added to the certificate of acknowledgment in the manner Mr. Zeller described. The acknowledgments appear as follows:

**INDIVIDUAL ACKNOWLEDGMENT**

STATE OF Texas
COUNTY OF Harris } SS:

On this __8th__ day of __May__, __2002__ before me, the subscriber, personally appeared __Charles R. Zeller and Patricia Ann Zeller__ to me personally known, and known by me to be the person __s__ described in, and who executed, the foregoing instrument and acknowledged same to be __their__ act and deed.

My Commission Expires _____   _____ (Notary Public)

[Notary stamp: JANNICE R. BONNER, Notary Public, State of Texas, My Commission Expires May 19, 2003]

**INDIVIDUAL ACKNOWLEDGMENT**

STATE OF Alabama
COUNTY OF Baldwin } SS:

On this __8th__ day of __May__, __2002__ before me, the subscriber, personally appeared __Atho D. Bryan__ to me personally known, and known by me to be the person _____ described in, and who executed, the foregoing instrument and acknowledged same to be __his__ act and deed.

My Commission Expires __5-07-06__   _Frances J. Burroughs_ (Notary Public)

(Ex. A to Complaint). If "and Patricia Ann Zeller" were added after the acknowledgment was executed, there would have presumably been a line under Ms. Zeller's name. In order to add Ms. Zeller's name without the line, either there would have had to have been a large space left in the line prior to the addition of her name, or the line would have had to have been erased or covered up. The court finds either scenario of alteration unlikely, since a large space would have looked very irregular and suspicious. There has been no argument that the line appears to have been altered.

      Ms. Zeller's testimony also claims that she never signs official documents as "Patricia Ann Zeller." However, the court notes that the discovery documents in this case indicate that if

7

Ms. Zeller is addressed in a document as "Patricia Ann Zeller" or "Patricia Zeller," and/or is provided a signature line under which "Patricia Ann Zeller" is typed, Ms. Zeller signs her name as "Patricia Ann Zeller." (See Docs. 63 & 102 - Patricia Ann Zeller Affidavit & Patricia Zeller's Notice of Filing Discovery).   Thus, if Ms. Zeller had been presented with the indemnity agreements at issue here in which she is named as an indemnitor and addressed as "Patricia Ann Zeller" and which has a signature line under which "Patricia Ann Zeller" is typed, it is likely that would have signed the document as "Patricia Ann Zeller."  Thus, the court finds the use of "Patricia Ann Zeller" for her signature provides little evidence of forgery.

A second Alabama case cited and discussed in Ms. Zeller's brief is Sims v. State of Alabama Commission on Higher Education, 582 So.2d 1137 (Ala.Civ.App. 1991), which, according to Zeller, is distinguishable from the instant case.  In Sims, forgery was raised as a defense to set aside a default judgment.  The Court denied the relief requested, stating as follows:

> The record shows that the appellant raised the defense of forgery both in her pleadings and at the hearing. However, the record shows that Sims's signature on all three loan forms was notarized and witnessed. Sims's only rebuttal to this evidence was her testimony that she "was not sure" that one of the signatures was her own because it "looked different" from the others. The trial court found that this bare assertion did not constitute a meritorious defense, and there is no evidence in the record to bolster Sims's statement.

Id. at 1139.   The court agrees that the evidence of forgery in the instant case is stronger than that in Sims.  Mr. and Ms. Zeller have testified in no uncertain terms that Ms. Zeller did not sign the indemnity agreements.  There is nothing unsure about their statements.  However, the evidence in both cases consists primarily of the self-serving testimony of the signatories.  The parties have apparently been unable to find a case in Alabama or in this Circuit that directly addresses the issue of whether self-serving testimony is sufficient to rebut the presumption of correctness of a certificate of acknowledgment.  Courts in other jurisdictions that have addressed similar issues and have found that such testimony is insufficient. See e.g. Kyllo v. Office of Personnel Mgt.,

8

194 F.3d 1328 (Table), 1999 WL 55167, *1 (Fed. Cir. 1999) ("self-serving statement was insufficient to overcome the presumption that her notarized signature on the Spouse's Consent to Survivor's Election was genuine");  Orix Financial Services, Inc. v. Thunder Ridge Energy, Inc., 2006 WL 587483, 19 (S.D. N.Y. March 8, 2006) ("The mere 'unsupported testimony of interested witnesses' is insufficient as a matter of law to rebut the presumption that a notarized signature is authentic." (citations omitted)); Abrons v. 149 Fifth Ave. Corp., 45 A.D.3d 384, 385, 845 N.Y.S.2d 299, 300 (N.Y. App. Div. 2007)("plaintiffs' self-serving statements that the signature does not appear to be genuine are insufficient to raise a forgery issue").

The court notes that the Seventh Circuit has found such self-serving testimony was insufficient even where there was evidence that the notary did not know the signatory and had no recollection as to whether the signatory personally appeared before her. Butler v. Encyclopedia Brittanica, Inc., 41 F.3d 285, 295 (7th Cir. 1994).  The Court reasoned as follows:

> However, only a rare individual can remember every person with whom the individual has a brief encounter. Indeed, that is the basic reason for recognizing a presumption of validity for a notary's certificate in the first place. If a notary's certificate were vulnerable to attack every time an interested witness contradicted the certificate and the notary did not have a personal recollection of the event, "it would shock the moral sense of the community, deny justice, and create chaos in land titles[ ]" and every other type of document requiring notarization. Koepke v. Schumacher, 406 Ill. 93, 98, 92 N.E.2d 152, 155 (1950).

Id.  The document at issue in Butler was a "Spouse's Waiver of Primary Beneficiary Designation" form which stated that Celia Cotini's spouse consented to the designation of a different primary beneficiary for her pension and savings plan. Id. at 286.  After Ms. Cotini's death, her husband asserted that the form was invalid because he was not present before the notary and that the notary did not actually witness him signing the documents. Id.  The notary public admitted that she did not know Mr. Cotini and that she sometimes notarized documents without the signing party being present. Id. at 287.  The Court found, however, that "while this

statement suggests that her certificate may be invalid in some cases, her testimony does not provide the clear and convincing evidence required to prove that the certificate was false in this particular case." Id. at 295.  The Court stated that although the notary "may have notarized some documents for employees who claimed that the document was signed by the employee's spouse, there is no competent evidence that [the notary] did so for [the signatories' spouse in this case]." Id.

The court also notes that in Farmer v. Hypo Holdings, Inc., 675 So.2d 387 (Ala. 1996), the Supreme Court of Alabama found self-serving testimony insufficient to overcome the presumption of correctness of a certificate of acknowledgment where there was additional evidence to support the correctness of the acknowledgment.  In Farmer, summary judgment was granted in favor of the Mortgagee and plaintiffs appealed contending, among other things, that the mortgage at issue was invalid because it was not acknowledged in the plaintiffs' presence. Id. at 389.  The notary public stated in an affidavit that the plaintiffs executed the mortgage in his presence. Id. at 391.  The Supreme Court of Alabama, construing the evidence in the light most favorable to plaintiffs, found that given the presumption of correctness of the certificate of acknowledgment that the plaintiffs' contentions were insufficient to meet their burden of proof. Id. at 389, 391.

In light of the above case law and evidence discussed above, the court is persuaded that the self-serving testimony and other evidence offered by the Zellers in this case is insufficient to overcome the presumption of correctness of the certificate of acknowledgments.  Although there is no testimony by the notary public to bolster the authenticity of the certificates of acknowledgment, the court finds that the evidence attacking the certificates falls short of the clear and convincing standard.  Thus, the plaintiff is entitled to entry of judgment in its favor against defendant, Patricia Ann Zeller.  Because the evidence is conflicting, **the plaintiff is to**

**submit proof to the court, no later than April 23, 2008 of the amount the plaintiff incurred in costs and expenses to date in fulfilling the defaulted payments and performance obligations** under the bonds and in seeking to enforce the indemnitors' obligations.

The court further finds that default judgment is due to be entered in plaintiff's favor against defendants, American Consertech, Inc., E. Scott Cope, and Gloria G. Cope in the amount requested in plaintiff's motion.

## CONCLUSION

For the reasons stated above, the court will enter judgment against **Patricia Ann Zeller** and **Charles Zeller** in favor of plaintiff in an amount to be determined after April 23, 2008.

The court will also enter Default Judgment in favor of plaintiff and against defendants, American Consertech, Inc., E. Scott Cope, and Gloria G. Cope in the amount of **$3,476,165.70.**

**DONE and ORDERED** this 9th day of April, 2008.

/s/ Callie V. S. Granade
CHIEF UNITED STATES DISTRICT JUDGE